```
          IN THE UNITED STATES DISTRICT COURT
          FOR THE MIDDLE DISTRICT OF GEORGIA
                   COLUMBUS DIVISION
```

| | |
|---|---|
| IN RE MENTOR CORP. OBTAPE | * MDL Docket No. 2004 |
| | 4:08-MD-2004 (CDL) |
| TRANSOBTURATOR SLING PRODUCTS | * |
| | Case Nos. |
| LIABILITY LITIGATION | * 4:13-cv-132 (Evans) |

O R D E R

Defendant Mentor Worldwide LLC developed a suburethral sling product called ObTape Transobturator Tape, which was used to treat women with stress urinary incontinence. Plaintiff Jennifer Evans was implanted with ObTape and asserts that she suffered injuries caused by ObTape. Mrs. Evans brought a product liability action against Mentor, contending that ObTape had design and/or manufacturing defects that proximately caused her injuries. Mrs. Evans also asserts that Mentor did not adequately warn her physicians about the risks associated with ObTape. Her husband Carl brought a loss of consortium claim. Mentor seeks summary judgment on the Plaintiffs' claims, contending they are time-barred. For the reasons set forth below, the Court finds that a genuine fact dispute exists on when the Plaintiffs' claims accrued, so Mentor's summary judgment motion (ECF No. 38 in 4:13-cv-132) is denied.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.  *Id.*

FACTUAL BACKGROUND

Dr. John Brizzolara implanted Jennifer Evans with ObTape on July 19, 2005.  Mrs. Evans also had several other procedures performed on that date, including a rectocele repair, enterocele repair, and a hysterectomy.  Three weeks after the surgery, Mrs. Evans returned to Dr. Brizzolara for a follow-up appointment.  Mrs. Evans's incontinence had not resolved, and Dr. Brizzolara found that she had exposed mesh.  Dr. Brizzolara recommended "re-doing the ObTape."  Lewis Decl. Ex. D, Evans Medical Record, ECF No. 38-7.  Dr. Brizzolara testified that he believed that the first sling was not "tensioned properly" and that is why

Mrs. Evans's incontinence returned shortly after the first procedure. Brizzolara Dep. 141:24-142:2, ECF No. 41-3; *accord* J. Evans Dep. 101:4-11, ECF No. 38-8. (stating that Dr. Brizzolara mentioned that the tape had come loose). Dr. Brizzolara removed the old ObTape and put in a new ObTape on August 12, 2005.

In November 2005, Mrs. Evans went back to Dr. Brizzolara and reported recurrent stress urinary incontinence, as well as pain with intercourse at the site of the rectocele repair. Brizzolara Dep. 93:19-94:15. At the time, nothing suggested to Dr. Brizzolara that the ObTape was causing Mrs. Evans's pain. *Id.* at 95:2-5. In January 2006, Mrs. Evans returned to Dr. Brizzolara complaining of vaginal discharge and other symptoms. At the time, Dr. Brizzolara did not think the discharge had anything to do with Mrs. Evans's sling. *Id.* at 101:1-6.

Mentor contends that Mrs. Evans called Dr. Brizzolara's office in 2007 and left a message for him about a "legal matter." Dr. Brizzolara did not recall receiving a message about a legal matter; Mrs. Evans did not recall leaving a message about a legal matter; and Mentor did not point to any other evidence on this issue. The message itself is not in the present record, nor is any testimony from the person who took the message. Mrs. Evans did testify that she believed she "was unhappy with [Dr. Brizzolara] about the service" and "may have

3

asked [Dr. Brizzolara] what my options were or something" about "getting better," J. Evans Dep. 82:7-21, 83:21-25, although it is unclear from the present record when this conversation took place or that Mrs. Evans associated her symptoms with ObTape.

When they filed this action, the Evanses lived in Arkansas, and Mrs. Evans's ObTape-related treatment took place in Arkansas. Mrs. Evans asserts claims for negligence, strict liability – defective design; strict liability – manufacturing defect; strict liability – failure to warn; breach of implied warranty; breach of express warranty; fraudulent misrepresentation; fraudulent concealment; and negligent misrepresentation. Mr. Evans asserts a loss of consortium claim.

## DISCUSSION

The Plaintiffs filed their action in this Court on May 10, 2013 under the Court's direct filing order. The parties agreed that for direct-filed cases, the "Court will apply the choice of law rules of the state where the plaintiff resides at the time of the filing of the complaint." Order Regarding Direct Filing § II(E), ECF No. 446 in 4:08-md-2004. When the Plaintiffs filed their Complaint, they lived in Arkansas, and all of Mrs. Evans's ObTape-related treatment took place in Arkansas. The parties agree that Arkansas law applies to the Plaintiffs' claims.

4

Under Arkansas law, "[a]ll product liability actions shall be commenced within three (3) years after the date on which the death, injury, or damage complained of occurs." Ark. Code Ann. § 16-116-103. The parties agree that this statute of limitations applies to all of the Plaintiffs' claims. The statute of limitations "does not commence running until the plaintiff knew or, by the exercise of reasonable diligence, should have discovered the causal connection between the product and the injuries suffered." *Martin v. Arthur*, 3 S.W.3d 684, 690 (Ark. 1999). In *Martin*, for example, the Arkansas Supreme Court found a jury question on when the statute of limitations began to run because there was a fact dispute as to when the plaintiff discovered or reasonably should have discovered that her injuries were related to the defendant's product.

Here, Mentor argues that Mrs. Evans's claims accrued in August 2005 when she went back to Dr. Brizzolara for a follow-up appointment because she had recurrent incontinence and her mesh was exposed. But the undisputed evidence shows that Dr. Brizzolara thought that the problems occurred because the first sling was not tensioned properly, and that is what he told Mrs. Evans when he recommended redoing the sling procedure using another ObTape sling. Therefore, a reasonable person in Mrs. Evans's situation could certainly conclude that her problems in August 2005 were caused by the implant surgery, not the product

5

itself. For these reasons, whether ObTape was the mechanism that contributed to the problems Mrs. Evans experienced three weeks post-surgery is genuinely disputed. Therefore, a jury question exists as to whether the statute of limitations began running in August 2005 as Mentor argues.

Mrs. Evans asserts that she did not connect her symptoms to ObTape until 2011, when she saw a television commercial regarding mesh complications. Mentor did not point to any evidence that establishes *as a matter of law* that Mrs. Evans knew or should have known of a connection between her symptoms and ObTape earlier than 2011. During Mrs. Evans's subsequent follow-up visits with Dr. Brizzolara, Dr. Brizzolara never made a connection between ObTape and Mrs. Evans's symptoms, and he never told Mrs. Evans that there might be such a connection. Dr. Brizzolara never diagnosed Mrs. Evans with an erosion of the ObTape, and he did not tell her that her discharge or pain symptoms were related to her ObTape because he did not believe at the time that they were connected. There is also no evidence that any other doctor told Mrs. Evans of a connection between her symptoms and ObTape.

Mentor relies heavily on a phone message that Mrs. Evans allegedly left for Dr. Brizzolara—a message that is not in the present record and that neither doctor nor patient remembers. Mentor essentially asks the Court to find that Mrs. Evans's

6

deposition testimony in response to questions about this alleged message is conclusive evidence that Mrs. Evans understood by 2007 that her injuries were caused by ObTape. Viewed in the light most favorable to Mrs. Evans, the deposition testimony shows that Mrs. Evans was unhappy with the treatment she received from Dr. Brizzolara and may have called his office at some unknown time to discuss her treatment options after continuing to experience adverse symptoms that Dr. Brizzolara never attributed to ObTape following a surgery that included not only an ObTape implant (which may have been botched the first time) but also a hysterectomy, rectocele repair, and enterocele repair. In summary, evidence regarding the alleged telephone message does not establish as a matter of law that Mrs. Evans knew or should have known that her symptoms were related to ObTape before 2011.

The Court emphasizes that Mrs. Evans's claims are not barred by the statute of limitations as a matter of law because a genuine fact dispute exists as to whether the injuries Mrs. Evans had in August 2005 were caused by ObTape (as opposed to a problem with the implant surgery) and because a genuine fact dispute exists on when Mrs. Evans knew or should have known that her injuries were connected to ObTape. The circumstances in the present case are distinguishable from other cases the Court has reviewed in this multidistrict litigation proceeding. In many

7

of those other cases where a revision surgery was required to repair exposed ObTape, the undisputed evidence established that the revision surgery was necessary because the ObTape had eroded through the plaintiff's bodily tissues, had become exposed, and had caused adverse symptoms that prompted the plaintiff to seek additional medical treatment from her doctor. In other words, no reasonable person could have concluded in those cases that there was not a connection between the product, ObTape, and her injuries. Here, the present record does not support a conclusion by the Court that a reasonable factfinder could *only* find such a connection. Instead, the present record would permit a reasonable factfinder to conclude that during a follow-up visit three weeks after Mrs. Evans's implant surgery, Dr. Brizzolara found a complication from the surgery, but he did not diagnose Mrs. Evans with an erosion of the ObTape at that time. Rather, he told Mrs. Evans that he believed the first ObTape was not tensioned properly and that he needed to redo the surgery. For all of these reasons, the Court concludes that Mentor has not met its burden of establishing that the statute of limitations bars Mrs. Evans's claims as a matter of law.[1] Mr. Evans's derivative loss of consortium claim is likewise not time-barred.

---

[1] This ruling does not mean that Mentor may not eventually prevail on its statute of limitations defense, but it is not entitled to prevail *as a matter of law* based on the present record.

8

CONCLUSION

As discussed above, Mentor's summary judgment motion (ECF No. 38 in 4:13-cv-132) is denied. Within seven days of the date of this Order, the parties shall notify the Court whether the parties agree to a *Lexecon* waiver.

IT IS SO ORDERED, this 19th day of April, 2016.

s/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA
